**THK AMERICA, INC., Plaintiff,**

v.

**NSK LTD., and NSK Corporation, Defendants.**

**90 C 6049.**

United States District Court, N.D. Illinois, Eastern Division.

May 5, 1994.

Opinion Denying Reconsideration May 31, 1994.

---

Robert Edward Wagner, James Joseph Jagoda, Alan L. Barry, Wallenstein, Wagner & Hattis, Ltd., Chicago, IL, Shahan Islam, William F. Westerman, Anderson, Kill, Olick & Oshinsky, P.C., New York City, John E. Daniel, Rogers & Wells, New York City, John E. Kidd, Walter G. Marple, Jr., Michael O'Shea, Shea & Gould, New York City, James E. Armstrong, III, Armstrong, Nikaido, Marmelstein, Kubovcik & Murray, Washington, DC, for THK America Inc.

Daniel Michael Riess, Daniel Robert Pastirik, Lockwood, Alex, Fitzgibbon & Cummings, Chicago, IL, Deborah H. Bornstein, Thomas Campbell, Richard William Young, James William Teevans, Gardner, Carton & Douglas, Chicago, IL, Charles E. Miller, Scott D. Stimpson, Pennie & Edmonds, New York City, for Nippon Seiko K.K., N.S.K. Corp.

## OPINION AND ORDER

NORGLE, District Judge:

Before the court are objections of defendants NSK Ltd. and NSK Corporation (collectively "NSK") to the April 11, 1994 order of Magistrate Judge W. Thomas Rosemond, Jr. For the following reasons, the objections are overruled in their entirety.

### BACKGROUND

In connection with plaintiff THK America, Inc.'s ("THK") motion to compel NSK to de-designate confidential "Attorney's Eyes Only" documents on the basis of NSK's violation of a protective order entered in this cause and NSK's motion for separate trial on the willfulness issue, attorneys' fees were awarded to THK as a form of sanctions against NSK. To determine the amount of fees to be awarded, the court directed THK to submit an application to the Magistrate Judge.

This cause has been referred to Magistrate Judge Rosemond on June 11, 1991 pursuant to Rule 2.41(B) of the Rules of the United States District Court for the Northern District of Illinois. Since the referral, Magistrate Judge Rosemond has been actively involved in resolving all of the issues contested by the parties and familiarizing with the subject matter of the action as well as the counsel for the respective parties.

The Magistrate Judge reviewed and approved THK's application for attorneys' fees.[1] As a result, attorneys' fees in the amount of $96,140.80 were awarded to THK. The Magistrate Judge's order awarding this sum was entered on April 11, 1994 and the notice of the order was provided to the attorneys of record by mail. Subsequently, dissatisfied with the amount of attorneys' fees imposed on NSK, NSK filed its objections to the order on April 29, 1994.

### DISCUSSION

Pursuant to the relevant Federal Rules of Civil Procedure, Rules 72(a) and 6(e), NSK's April 29, 1994 objections are untimely. Fed. R.Civ.P. 72(a) provides in relevant part that "[w]ithin 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order; a party may not thereafter assign as error a defect in the magistrate judge's order to which objection was not timely made." Rule 6(e) provides that:

> Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon the party and the notice or paper is served upon the party by mail, 3 days shall be added to the prescribed period.

Fed.R.Civ.P. 6(e).

Applying these rules to the facts of this case, NSK had thirteen days from April 11, 1994 to file timely objections to the Magistrate Judge's order approving the application and awarding attorneys' fees. The thirteenth day expired on April 24, 1994. NSK, therefore, had until April 25, 1994 to file timely objections because April 24, 1994 fell on a Sunday. *See* Fed.R.Civ.P. 6(a). NSK, however, failed to file its objections until four days after the permitted time period. Thus, NSK's objections are overruled as untimely.

Further, NSK did not file a timely motion to request an extension of time to file an objection or to file the late objection instanter on April 29, 1994. Moreover, NSK does not even raise the untimeliness issue in its objection. " 'Ostrich-like tactic[s] of pretending that potentially ...' " damaging factors or rules do not exist are discouraged. *Borowski v. DePuy, Inc.*, 850 F.2d 297, 305 (7th Cir.1988) (quoting *Szabo Food Service v. Canteen Corp.*, 823 F.2d 1073, 1081 (7th Cir. 1987)).

■ NSK's failure to comply with the relevant rules cannot be deemed inadvertent or an oversight. Magistrate Judge Rosemond has routinely included a caveat in his orders that objections to his orders must be filed within ten days pursuant to Fed.R.Civ.P. 72(a). *See THK v. NSK*, 151 F.R.D. 625, 635 n. 49 (N.D.Ill.1993) (Rosemond, Mag. J.); *THK v. NSK*, 141 F.R.D. 461, 463 (N.D.Ill. 1991) (Rosemond, Mag. J.). Additionally, the subject order entered on April 11, 1994 also includes a footnote which discusses the relevant rules to be followed in order to timely file an objection.

The Federal Rules of Civil Procedure are not window dressings to be viewed, admired but soon to be forgotten once out of sight. Consistent adherence to the Rules facilitates timely judicial administration and allows the parties to rely on the enforceability of rulings by the Magistrate Judge without second guessing as the litigation progresses. Reliance on court orders is necessary to focus on the merits of the case and to minimize the uncertainties inherent in litigation.

In this almost four-year old case where there have been protracted discovery disputes, a flurry of motions and objections, litigation within litigation, hearings within hearings, and motions within motions, compliance with the relevant Rules of Civil Procedure is required of both parties to maintain an orderly progression of the case.

### CONCLUSION

For the foregoing reasons, the objections of NSK are overruled in their entirety. The Magistrate Judge's order of April 11, 1994 shall stand.

IT IS SO ORDERED.

---

**1.** The application for attorneys' fees was heard by the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A).

## OPINION AND ORDER ON
## RECONSIDERATION

Before the court is the motion of defendants NSK Ltd. and NSK Corporation (collectively "NSK") for reconsideration of the court's May 5, 1994 order overruling NSK's objections to the April 11, 1994 order of Magistrate Judge W. Thomas Rosemond, Jr. For the following reasons, the motion is denied.

### BACKGROUND

In connection with plaintiff THK America, Inc.'s ("THK") motion to compel NSK to de-designate confidential "Attorney's Eyes Only" documents on the basis of NSK's violation of a protective order entered in this cause and NSK's motion for separate trial on the willfulness issue, attorneys' fees were awarded to THK as a form of sanctions against NSK. To determine the amount of fees to be awarded, the court directed THK to submit an application to the Magistrate Judge.

This cause has been referred to Magistrate Judge Rosemond on June 11, 1991 pursuant to Rule 2.41(B) of the Rules of the United States District Court for the Northern District of Illinois. Since the referral, Magistrate Judge Rosemond has been actively involved in resolving all of the issues contested by the parties and familiarizing himself with the subject matter of the action as well as the counsel for the respective parties.

The Magistrate Judge reviewed and approved THK's application for attorneys' fees.[1] As a result, attorneys' fees in the amount of $96,140.80 were awarded to THK. The Magistrate Judge's order awarding this sum was entered on April 11, 1994 and the notice of the order was provided to the attorneys of record by mail. Subsequently, dissatisfied with the amount of attorneys' fees imposed on NSK, NSK filed its objections to the order on April 29, 1994.

On May 5, 1994, the court overruled NSK's objections as untimely pursuant to Fed.R.Civ.P. 72(a) and Rule 6(e). In response,

NSK files its motion for reconsideration proposing its analysis of the relevant time computation. The critical differences between the court's and NSK's time computation are the date the prescribed period commenced to run and the integration of Fed.R.Civ.P. 6(a) and 6(e). The court agrees with NSK that the date the prescribed period for filing objections began to run on April 13, 1994. The court, however, disagrees with NSK's interpretation of Rules 6(a) and 6(e).

### DISCUSSION

The relevant portion of Rule 6(a) of the Federal Rules of Civil Procedure, for purposes of this motion, provides that "[w]hen the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and Legal holidays shall be excluded in the computation." To determine whether this provision applies to the instant matter in computing the deadline for filing objections to the Magistrate Judge's order, the court must first determine the length of the prescribed period for filing objections.

■ Under Fed.R.Civ.P. 72(a) a party may serve and file objections "[w]ithin 10 days after being served with a copy of the magistrate judge's order...." Therefore, pursuant to Rule 72(a), the prescribed period for filing objections to the Magistrate Judge's order is ten days. NSK argues that because the prescribed period is less than eleven days, intermediate Saturdays, Sundays, and holidays must be excluded from the computation. According to NSK's calculation, the tenth day rested on April 26, 1994. NSK's calculation continues from there by adding three additional days from April 26, 1994 pursuant to Fed.R.Civ.P. 6(e). The thirteenth day, therefore, ended on April 29, 1994, which is the date NSK filed its objections to Magistrate Judge Rosemond's order of April 11, 1994. From this calculation, NSK concludes that its objections were timely. The court disagrees.

NSK's calculation is not without support. Other non-Seventh Circuit district courts and

---

1. The application for attorneys' fees was heard by the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A).

the Ninth Circuit Court of Appeals have followed the calculation proposed in their respective orders. *Tushner v. U.S. Dist. Ct. for the C.D. of Calif.*, 829 F.2d 853, 855–56 (9th Cir.1987); *Vaquillas Ranch Co., Ltd. v. Texaco Exploration & Prod., Inc.*, 844 F.Supp. 1156, 1159 (S.D.Tex.1994); *Nalty v. Nalty Tree Farm*, 654 F.Supp. 1315, 1317 (S.D.Ala.1987). The *Nalty* opinion is the genesis of the proposition that the three day mailing rule should apply after the ten days are computed according to Rule 6(a). The courts in *Tushner* and *Vaquillas* found *Nalty* reasoning persuasive and adopted it. Thus, the court will briefly discuss the *Nalty* logic.

The district court in *Nalty* was confronted with the identical issue that is before this court. In that case, one party argued that three days should be added to the prescribed ten days first, thereby obviating the need to apply the subject Rule 6(a) provision. Of course, the opposing party contends, as does NSK, that Rule 6(a) must be applied prior to adding three days. To resolve the controversy, the *Nalty* court reviewed and considered the Advisory Committee Notes to the 1985 Amendment which extended the exclusion of intermediate Saturdays, Sundays, and holidays to prescribed periods less than eleven from seven days. *Nalty*, 654 F.Supp. at 1316–17. After reviewing the Committee Notes, the *Nalty* court concluded that "the 1985 amendment was intended to extend the response time allowed under various rules prescribing ten day time limits." *Id.* at 1317. From this observation the court held that if the three mailing days were added upfront, "[t]he resulting thirteen day response period would be identical to the thirteen day period that existed prior to the 1985 amendment[,]" and that such result would be inconsistent with the "obvious intentions of the advisory committee." *Id.*

The court cannot find this analysis persuasive in light of the plain meaning of Rules 6(a) and 6(e). Further, the court questions the logic of the *Nalty* court. First, the Advisory Committee's Notes indicate that by extending the applicability of Rule 6(a) from seven to eleven days prevents parties from having to prepare their motions in few as five working days. The relevant language of the Notes states as follows:

> Under the current version of the Rule, parties bringing motions under rules with 10–day periods could have as few as 5 working days to prepare their motions. This hardship would be especially acute in the case of Rules 50(b) and (c)(2), 52(b), and 59(b), (d), and (e), which may not be enlarged at the discretion of the court. . . .

Fed.R.Civ.P. 6(a) ADVISORY COMMITTEE NOTES 1985 Amendment. The *Nalty* court appears to reason that from these comments the intention of the Advisory Committee was clearly to expand the ten day response time. The Notes are, however, not necessary to reach that conclusion. The language of Rule 6(a) explicitly states that when the response time is less than eleven days, weekends and holidays are excluded from computation.

Second, it is not reasonable to conclude that the "obvious intentions" of the Committee was not to have the thirteen-day response period identical to the thirteen-day response period prior to the 1985 Amendment. Under the 1985 Amendment, a eleven-day response period remains identical to a eleven-day response period prior to the amendment. Likewise, a twelve-day response period remains identical to a twelve-day response period. What is clear, however, is that the Committee did not mention or consider those ten-day response periods subject to three-day extensions by operation of Rule 6(e). Additionally, the Advisory Committee did not address the integration of Rules 6(a) and 6(e).

Moreover, the Committee in implementing the 1985 Amendment could not have intended to establish perfect equity in providing additional time to respond. Under the 1985 Amendment, a party who has ten days to respond has ten working days to prepare the relevant pleading; whereas, a party who is granted more time to respond, eleven days, has only nine working days at the maximum or as few as seven days to prepare his or her pleading.

■ While it is true that a decision of a district court in a different district may be considered as a persuasive authority, the court is not bound by such decision under the

doctrine of *stare decisis*. *Colby v. J.C. Penney Co., Inc.*, 811 F.2d 1119, 1123–24 (7th Cir.1987). In this case, the court does not find the *Nalty* decision persuasive. Therefore, the decisions of the *Tushner* and *Vaquillas* courts, cited by NSK, are also unpersuasive as they adopted the faulty analysis of *Nalty*.

The logical method of applying the relevant rules to the issue at hand is applying the plain meaning of the rules as they are in force rather than to surmise and hypothesize as to the Advisory Committee's intent on the integration of Rules 6(a) and 6(e). Justice Clarence Thomas emphasized in *Connecticut Nat. Bank v. Germain*, —— U.S. ——, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992), that the United States Supreme Court has "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Id.* at ——, 112 S.Ct. at 1149. Justice Thomas went on to comment that "[w]hen the words of a statute are unambiguous, then this first canon is also the last: 'judicial inquiry is complete.'" *Id.* (quoting *Rubin v. United States*, 449 U.S. 424, 430, 101 S.Ct. 698, 701–02, 66 L.Ed.2d 633 (1981)); *In re Udell*, 18 F.3d 403, 411 (7th Cir.1994) (Flaum, J., concurring); *United States v. Hayward*, 6 F.3d 1241, 1245 (7th Cir.1993); *Welsh v. Boy Scouts of America*, 993 F.2d 1267, 1270 (7th Cir.1993).

■ Now, the court turns to its computation as directed by the Federal Rules of Civil Procedure. Rule 72(a) prescribes the period for filing objections as ten days. The analysis, however, does not end here. Because the notice of the Magistrate Judge's order is served by mail in this case, the court must also consider Fed.R.Civ.P. 6(e). Rule 6(e) provides that:

> Whenever a party has the right or is required to do some act or take some proceedings within a *prescribed period* after the service of a notice or other paper upon the party and the notice or paper is served upon the party by mail, *3 days shall be added to the prescribed period.*

Fed.R.Civ.P. 6(e) (emphasis added). The rule plainly and unambiguously commands that three days must be added to the pre-

scribed period. Both Rule 6(a) and Rule 6(e) employ the identical term "prescribed." The plain construction then is to determine the length of the prescribed period before Rule 6(a) can be applied correctly. To simply stop the determination of the prescribed period, under the facts of this case, with Rule 72(a) would be incomplete. Thus, the addition of three days yields a prescribed period of thirteen days, obviating the need for applying the less-than-eleven-day rule under Rule 6(a). The court would concede that NSK's calculation would be the correct calculation if Rule 6(e) provided that a prescribed period shall not commence to run until three days after service. This, however, is not the case under the plain construction of the rules.

■ Applying these rules to the facts of this case, NSK had thirteen days from April 13, 1994 to file timely objections to the Magistrate Judge's order approving the application and awarding attorneys' fees without excluding weekends and legal holidays. The thirteenth day expired on April 25, 1994. NSK, therefore, had until April 25, 1994 to timely file its objections. NSK, however, failed to file its objections until four days after the permitted time period. According to the facts of this case, NSK had at least seven full working days, not including April 14, 1994, the date when NSK obtained actual notice of the Magistrate Judge's order. Furthermore, the issue surrounding the objections has been researched and fully briefed before the Magistrate Judge and narrowed by the Magistrate Judge's written opinion. The Advisory Committee's concern over not having enough time to respond can hardly be said to apply in this case.

The court is cognizant of the additional time NSK would have gained if it received the notice in open court. Certainly, when the "literal interpretation would lead to an absurd result or thwart the purpose of the overall statutory scheme[,]" the court should look past the express language. *United States v. 916 Douglas Ave.*, 903 F.2d 490, 492 (7th Cir.1990), *cert. denied*, 498 U.S. 1126, 111 S.Ct. 1090, 112 L.Ed.2d 1194 (1991). Having determined that the intent of the Advisory Committee in enacting the 1985 Amendment is not clear as to the integration

of Rules 6(a) and 6(e), the court will not deviate from the first canon of construction. If the result in this case is contrary to the true intent of the Committee, the court defers the task to it to clarify the matter. For the foregoing reasons, the court finds NSK's contentions insufficient to alter the court's previous order.

As discussed in the court's May 5, 1994 opinion and order, in this almost four-year old case where protracted discovery disputes, a flurry of motions and objections, litigation within litigation, hearings within hearings, and motions within motions have been the norm, the importance of complying with the relevant Federal Rules of Civil Procedure by the parties is more evident to maintain an orderly progression of the litigation.

■ Even if NSK's objections were timely, they do not provide sufficient basis to reverse the Magistrate Judge's order of April 11, 1994. The court finds that the Magistrate Judge's order is supported by the record, and that NSK has failed to meet the "clearly erroneous or contrary to law" standard of review pursuant to Fed.R.Civ.P. 72(a). The thrust of NSK's objections is that, in its opinion, Magistrate Judge Rosemond "summarily approved" the fee petition filed by THK America, Inc. ("THK") at the waive of a wand. The court's review of the order entered by the Magistrate Judge does not support NSK's characterization of the Magistrate Judge's efforts in resolving the fee issue. NSK's attack on the Magistrate Judge with respect to the April 11, 1994 order is wholly unsubstantiated. In fact, such unsupported and conclusory arguments coupled with NSK's vexatious litigation tactics caused NSK to be in the predicament of having to pay $96,140.80 in fees. The sum awarded to THK may be substantial; nevertheless, it is reasonable. Magistrate Judge Rosemond succinctly summarizes in his order that "[s]uccessful and reasonable litigation is not cheap." The court concurs in this.

## CONCLUSION

For the foregoing reasons, the motion of NSK for reconsideration is denied. The Magistrate Judge's order of April 11, 1994 shall stand. Furthermore, having resolved the motion for reconsideration, the court's order staying the payment of the fee is hereby lifted. NSK shall have until June 14, 1994 to make the fee payment to THK.

IT IS SO ORDERED.

## ORDER

ROSEMOND, United States Magistrate Judge.

Before the Court is the *"Application Of Plaintiff For Attorneys' Fees And Costs As Authorized By Court Orders"* filed pursuant to the August 6th and September 3d, 1993 Orders of the Magistrate Judge, both of which were affirmed by Orders of the District Judge dated November 30, 1993. ***The fee petition is approved.***

■ The *"Defendants' Objections To Plaintiff's Application For Attorneys' Fees And Costs"* are not to be viewed in a vacuum. They must be viewed against the backdrop of the fee petition itself. In other words, given that it was misconduct of counsel which triggered the sanctions, given the nature of the misconduct, and given that even a cursory review of the fee petition by the Judge most familiar with the record as a whole, including all oral arguments, hearings, and telephonic conferences transcribed and non-transcribed which constitute his collective knowledge of the case, reflects that the hourly rates charged were reasonable and that the work performed was reasonable and needed to be done, the defendants' somewhat general objections may be summarily rejected. The fee petition is well within the realm of reason, and well within the parameters of what the Court would expect given the matters briefed and the extensiveness of the briefs themselves.

■ Defendants argue first that if their misconduct was as "blatant" as charged by plaintiff, then plaintiff should not have had to accumulate approximately $50,000 in legal fees and costs to demonstrate it. The argument is without merit.

To demonstrate the baselessness of the defendants' position the Court itself expended considerable time and effort reviewing the

record, studying the various written submissions of the parties filed throughout the course of this litigation, and analyzing the various orders issued in this case. Perforce, in seeking to refute defendants' assertions the plaintiff was required to expend even more time.

Defendants' practice of constantly changing or reversing legal positions, or maintaining that a particular issue remained open when in fact it had been previously ruled upon required more than a simple refutation. It required specifics—what was the original inconsistent position, when and where was it argued, and when and where had an issue sought to be re-litigated by defendants been previously decided. Culling the record for specifics in order to present to the Court a carefully documented brief had to be costly in terms of manpower, money, and time.

Additionally, it must be remembered that the two NSK motions from which the sanctions awards stem concerned complicated multi-issued matters, and improperly and untimely raised new and difficult legal issues. The issues were heavily briefed and thoroughly and extensively argued in open-court. Had the motions concerned easy matters, the Court would have been able to rule from the bench immediately after oral argument. However, it was unable to do so. It took the Court considerable time to resolve the NSK motions—perforce it must have taken the parties even more time to research, analyze, write, and otherwise present the legal issues to the Court. In any event, it is NSK's misconduct which forced THK to engage in extensive and thorough efforts to oppose NSK's motions and point out its misconduct. Accordingly, THK may not be penalized for doing what was reasonably necessary to be successful. Successful and reasonable litigation is not cheap.

NSK's challenge to the manner in which THK counsel handled and staffed its opposition to the NSK motions is summarily rejected. We find the manner in which the THK opposition was handled and staffed entirely appropriate given the issues presented, the nature of the misconduct to which they were responding, the necessary extensive involvement of the lead partners, and the number of oral arguments held in the litigation as a whole and in particular the extensive oral argument on the two NSK motions at issue.

*We find NSK's remaining challenges to THK's requested fees and costs to be wholly without merit, and summarily reject them.*

**Accordingly, it is adjudged, decreed, and ordered as follows:**

1. The *"Application Of Plaintiff For Attorneys' Fees And Costs As Authorized By Court Orders"* is approved in every respect.

2. *"Defendants' Objections To Plaintiff's Application For Attorneys' Fees And Costs"* are overruled.

3. The sum of $96,140.80, consisting of $88,631.75 in legal fees and $7,509.05 in costs and disbursements, is to be paid on or before May 30, 1994.[1]

**So Ordered.**

Dated: April 11, 1994

---

1. Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, the parties must file their objections to the Order with The Honorable Charles R. Norgle, Sr. within 10 days after being served with a copy of the Order. Failure to file objections within the specified time period waives the right to appeal the Magistrate Judge's Order. *Video Views, Inc. v. Studio 21, Ltd.,* 797 F.2d 538 (7th Cir.1986). *See also, Provident Bank v. Man-* or *Steel Corporation,* 882 F.2d 258, 261 (7th Cir.1989) (when a matter has been referred to a Magistrate Judge, acting as a special master or § 636(b)(2) jurist, a party waives his right to appeal if he has not preserved the issues for appeal by first presenting them to the District Judge as objections to the Magistrate Judge's Order).