**Robert A. MULLINS, in his capacity as Administrator of the Estate of Etta Jean Malcomb, Plaintiff,**

v.

**Danny Lee HINKLE; the City of Richwood, West Virginia, a municipal corporation; David Smith, personally, and in his capacity as a member of the Police Department of the City of Richwood, West Virginia; Jimmy Gladwell, personally, and in his capacity as Mayor of the City of Richwood, West Virginia; Larry Tinney in his capacity as Chief of the Police Department of the City of Richwood, West Virginia; Frank White, Charles Reel, James Jarrett, Noble James, Jarrett Rader and Teresa McCarley as members of the City Council of the City of Richwood, West Virginia, Defendants.**

Civil Action No. 5:96–0634.

United States District Court, S.D. West Virginia. Beckley Division.

Feb. 5, 1997.

---

4. *See supra* note 3.

Harley E. Stollings, Breckinridge, Davis, Sproles & Stollings, Summersville, WV, for plaintiff.

Mark D. Hudnall, Summersville, WV, for Hinkle.

Charles R. Bailey, George J. Joseph, Shuman, Annand & Poe, Charleston, WV, for remaining defendants.

## OPINION AND ORDER

GOODWIN, District Judge.

On September 25, 1996, Magistrate Judge Mary Feinberg filed Findings and a Recommendation that the Court grant the plaintiff's Motion to Remand for failure of all defendants to join in the petition for removal. The

removing defendants (all defendants except the defendant Hinkle) objected to the Findings and Recommendation on October 9, 1996. These defendants assert that the claims stated against them in the complaint are "separate and independent" from the claim stated against the defendant Hinkle and that they are therefore excepted under 28 U.S.C. § 1441(c) from the requirement that all defendants must join in removal. After first considering whether the objections were timely filed, the Court will address the recommendation for remand.

## I. Timeliness of Objections

Whether the defendants' objections were timely filed determines the Court's standard of review of the Magistrate Judge's Findings and Recommendation. The Court must review timely objections de novo.[1] "When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." FED.R.CIV.P. 72(b), Advisory Committee Notes (1983 Addition) (applying to objections to findings and recommendations).

Magistrate Judge Feinberg provided in her order that "[p]ursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(a), Federal Rules of Civil Procedure, the parties shall have thirteen (13) days from the date of filing these Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Findings and Recommendation to which objection is made, and the basis of such objection." The defendants' objections were filed on October 9, 1996—14 days from September 25, 1996, the date on which Magistrate Judge Feinberg filed and caused to be served her Findings and Recommendation.

To arrive at the 13–day period, Magistrate Judge Feinberg added the 10–day period under 28 U.S.C. § 636(b)(1) and FED.R.CIV.P. 72(a) (objections must be filed within 10 days of service) and the 3–day period under FED. R.CIV.P. 6(3) (add three days to required periods when service is by mail).[2] Rule 6(a) provides that "When the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation" of time. FED.R.CIV.P. 6(a). The question is whether the Court should apply the Rule 6(a) exclusion to the 10–day period provided under 28 U.S.C. § 636(b)(1) and Rule 72(a) (and count the 3 days under Rule 6(e) separately) or whether it should add the 3–day period for service by mail to the 10–day period to achieve a total 13–day period, to which the exclusion would not apply.

There are no published decisions by either the Fourth Circuit or any district court within this circuit resolving the issue of the application of Rules 6(a) and 6(e) to this common situation.[3] After examining the decisions of other courts, the Court finds per-

---

1. The Court has determined that de novo review applies to any timely objections to a Magistrate Judge's Findings and Recommendations, whether the findings and recommendation relate to a dispositive or a nondispositive matter. See 28 U.S.C. § 636(b)(1); FED.R.CIV P. 72(b). The Court notes that most courts that have considered the issue find that a Magistrate Judge's order to remand is nondispositive. See Young v. James, 168 F.R.D. 24, 26–27 (E.D.Va.1996) (collecting cases). A "clearly erroneous or contrary to law" standard of review applies to Magistrate Judge's orders on nondispositive matters. 28 U.S.C. § 636(b)(1)(A); FED.R.CIV.P. 72(a). However, Magistrate Judge Feinberg did not enter an order, but entered Findings and a Recommendation to remand. Therefore, the Court is satisfied that de novo review is appropriate in this instance. It does not need to address the question of whether a motion to remand is dispositive or nondispositive.

2. Although Section 636(b)(1) and Rule 72(a) provide for a response time of 10 days "after being served" and Magistrate Judge Feinberg's Findings and Recommendation provided a response time after filing, that distinction is unimportant here. "Service by mail is complete upon mailing." FED.R.CIV.P. 5(b). Here, the parties were served, through counsel, by mail on the date of filing.

3. The Fourth Circuit has implicitly decided the issue in several unpublished opinions, but those decisions are not authority. See Fourth Circuit I.O.P. Rule 36.6. Although the Court did not rely on those Fourth Circuit decisions, the Court notes that the rule it adopts today is consistent with the results reached in those unpublished opinions.

suasive the logic of the court in *Nalty v. Nalty Tree Farm*, 654 F.Supp. 1315 (S.D.Ala. 1987). In that case, Judge Hand reasoned that failure to apply the Rule 6(a) exclusion to the 10–day time period (by adding the 3 days for mailing to achieve a 13–day period) would undermine the purpose of the 1985 amendment to Rule 6(a), which changed its application from periods of less than 7 days to periods of less than 11 days. *Nalty*, 654 F.Supp. at 1316–17. He further reasoned that his rule was supported by the implicit legislative presumption under Rule 6(e) of a lapse between service by mail and actual receipt of the paper served. *Id.* at 1317. This Court adopts the rule set out in *Nalty*, with one modification.

The *Nalty* rule is as follows: "[F]irst apply[ ] the less-than-eleven-day provision of Rule 6(a) to the ten day time period prescribed by Rule 72(b), thereby excluding any intervening Saturdays, Sundays, and legal holidays.... After establishing an initial response date by this method, three additional days should be added pursuant to Rule 6(e). If the final day should fall on a weekend or legal holiday, the objections would be due on the first official business day thereafter." *Nalty*, 654 F.Supp. at 1317–18.

The Court notes that the *Nalty* rule has been followed by most courts that have addressed the issue.[4] Professors Wright and Miller have updated their treatise to recommend that Rule 6(a) apply to the 10–day period and observe that this method "seems preferable, because of its fidelity to the purposes of Rules 6(a) and 6(e), and because it avoids creating undesirable incentives for parties to choose one form of service over another." 4A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1171, at 521 (1987).[5]

The Court must next decide whether to count the three days for service under Rule 6(e) at the beginning or at the end of the calculated 10–day period. One convention or another—either always count the three days for service first or always count them last—is needed to avoid confusion and to promote certainty.[6] Under either counting convention the objections in this case would be timely, but the Court believes that adopting a

---

4. *See CNPq—Conselho Nacional de Desenvolvimento Cientifico e Technologico v. Inter–Trade*, 50 F.3d 56, 58 (D.C.Cir.1995); *IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir.1993) (calculation of 10–day time limit for appeal); *Tushner v. United States District Court*, 829 F.2d 853, 855 (9th Cir.1987) (calculation of 10–day time limit for jury demand in removed case); *Vaquillas Ranch Co. v. Texaco Exploration and Production, Inc.*, 844 F.Supp. 1156, 1159 (S.D.Tex.1994); *Cardente v. Fleet Bank of Maine, Inc.*, 146 F.R.D. 13, 21 (D.Me.1993). *Contra THK America, Inc. v. NSK, Ltd.*, 157 F.R.D. 651, 655–57 (N.D.Ill.1994) (criticizing *Nalty*'s logic and concluding that adding 3 days to "prescribed period" under Rule 6(e) for service by mail to 10 days for objections resulted in "prescribed period" of 13 days, thus "prescribed period" under Rule 6(a) was not less than eleven days and intervening weekends and holidays should not be excluded); *Pagan v. Bowen*, 113 F.R.D. 667, 668 (S.D.Fla.1987) (citing 4A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1171 (1969)).

5. In discussing why they reject a different integration of Rules 6(a) and 6(e), Wright and Miller provide an illustration that demonstrates the undesirable incentive: When there is personal service, virtually every 10–day period is extended to at least 14 days because of the exclusion of intervening weekends; yet, if the three days for service by mail are added to prevent the application of Rule 6(a)'s weekend and holiday exclusion, only a 13–day period results. Furthermore, "the longer fourteen day period does not begin until actual receipt of the notice, but the shorter thirteen-day period following service by mail begins on the date of mailing" because service by mail is complete upon mailing under Rule 5(b). *Id.* at 517–18.

6. In this case, for example, counting the three days first under the method the Court adopts—a "three days first" rule—yields a due date for the objections of October 11 (see text *infra* for calculation). However, if the three days are added at the end of the 10–day period, the due date for objections would be October 15: The date of filing and service by mail, September 25, 1996, is not included. FED.R.CIV.P. 6(a). Counting forward 10 days, excluding intervening weekends and holidays, leads to October 9, a Wednesday. Adding 3 days for service by mail and stopping on the first day that is not a weekend or holiday leads to October 15 as the due date for objections (October 12, the third day after October 9, is a Saturday; Monday, October 14, 1996 was Columbus Day, a holiday). FED.R.CIV.P. 6(a), (e). The disparity results from the fact that weekends and holidays are excluded under Rule 6(a) from the 10–day calculation but not from the 3–day service addition under Rule 6(e).

clear rule is a prudent step to avoid the future expenditure of judicial time.

Some courts, including Judge Hand in *Nalty*, implicitly adopted a "3 days last" convention without recognizing that the days could be added at the beginning. *See Tushner v. United States District Court*, 829 F.2d 853, 855–56 (9th Cir.1987); *Coles Express v. New England Teamsters & Trucking Indus. Pension Fund*, 702 F.Supp. 355, 357 (D.Me. 1988); *Nalty*, 654 F.Supp. at 1317. At least one court explicitly recognized that the 3 days could be added at the beginning, but still adopted the "3 days last" convention. *See National Savings Bank of Albany v. Jefferson Bank*, 127 F.R.D. 218, 221 n. 6, 222 (S.D.Fla.1989). More logically, however, the 3 days should be added under a "3 days first" convention to reflect the presumed delay in receipt. Rule 6(e) "clearly is intended to protect parties who are served notice by mail from suffering a systematic diminution of their time to respond through the application of Rule 5(b), which provides that service is complete upon mailing, not receipt." 4A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1171, at 514 (1987). Professors Wright and Miller suggest that the three day period under Rule 6(e) should always be counted first to reflect the presumption and intention of the rule and to prevent inconsistent application. *Id.* at 520. The Court agrees with this suggestion and with the excellent analysis provided by Magistrate Judge Foster in *Epperly v. The Lehmann Co.*, 161 F.R.D. 72, 75 (S.D.Ind. 1994) where the court applied the "3 days first" rule.[7] Accordingly, the Court adopts the "3 days first" rule—a modification of Judge Hand's approach in *Nalty*.[8]

■ Applying the *Nalty* rule with the "3 days first" twist to the facts in this case yields a due date for the objections of October 11, 1996: The date of mailing/service, September 25, 1996, is not counted under the first sentence of Rule 6(a); counting forward 3 days under Rule 6(e) leads to September 28, a Saturday. The 10–day period is counted next, excluding weekends and holidays under Rule 6(a): Sunday, September 29 is excluded;[9] the 10 days are then September 30, October 1, 2, 3, 4, 7, 8, 9, 10, and 11 (October 5 and 6 are excluded as weekends). Because the objections were filed on October 9, 1996, the Court **FINDS** that the objections were timely.

## II. Merits Review of Remand Recommendation

Because the removing defendants filed timely objections to Magistrate Judge Feinberg's Findings and Recommendation, the Court will consider the question of remand *de novo.*

The plaintiff filed the complaint in Nicholas County, West Virginia, seeking compensatory and punitive damages, and alleged the following facts: The deceased, Etta Jean Malcomb, and the defendant Hinkle were divorced in February, 1994. Hinkle had a history of domestic violence, abused alcohol, and was mentally unstable. The removing defendants knew this history. On June 4, 1994, while still employed as a police officer by the city of Richwood, Hinkle killed Etta Jean Malcomb by beating and shooting her after the defendant Smith (also employed by Richwood as a police officer) negligently entrusted him with a vehicle in which the murder weapon, a 9–mm semi-automatic pistol, was concealed. The five count complaint can

---

7. Magistrate Judge Foster also recognized the support for the "3 days first" convention provided by the decisions that use Rule 6(e) to arrive at a presumption of when parties received notice. *Epperly*, 161 F.R.D. at 75 n. 7; *see also Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 148 n. 1, 104 S.Ct. 1723, 1724, 80 L.Ed.2d 196 (1984) (applying presumption); *Russell v. American Tobacco Co.*, 528 F.2d 357, 365 (4th Cir. 1975) (same).

8. *See also Littrell v. Shalala*, 898 F.Supp. 582, 584 (S.D.Ohio 1995) (implicitly applying "3 days first" convention).

9. Rule 6(a) excludes "intermediate" weekends and holidays and here the Sunday excluded is arguably not "intermediate" because it is the first day of the 10–day period. However, the Court concludes that the logic of Rule 6(a) suggests that this Sunday should be excluded as well because it is intermediate between the day of service, which starts the clock, and the deadline. *See* 4A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1171, at 520 n. 20 (1987).

be summarized as follows: (1) wrongful death by Hinkle; (2) negligent investigation, control, and discipline of Hinkle by the city defendants leading to Malcomb's death; (3) a claim under 42 U.S.C. § 1983 alleging violation of Malcomb's constitutional rights by the city defendants, based upon the same facts alleged in Count 2; (4) negligent training of police officers; and (5) negligent entrustment to Hinkle by defendant Smith of a vehicle in which the murder weapon was concealed. Hinkle is the sole defendant named in Count 1; he is not named in Counts 2 through 5.

All of the defendants except the defendant Hinkle removed this action based upon the § 1983 claim in Count 3 of the complaint. They assert that Hinkle did not need to join in removal under 28 U.S.C. § 1441(c) because the claims asserted against them are "separate and independent" from the claim asserted against Hinkle in Count 1 and, alternatively, that the defendant Hinkle is only a nominal party. The Court disagrees.

*Separate and Independent Claims*

Generally, all defendants must join in removing an action from state court. *Chicago, Rock Island and Pacific Ry. Co. v. Martin,* 178 U.S. 245, 20 S.Ct. 854, 44 L.Ed. 1055 (1900); *McKinney v. Board of Trustees of Mayland Community College,* 955 F.2d 924, 925 (4th Cir.1992); *Means v. G & C Towing, Inc.,* 623 F.Supp. 1244, 1244 (S.D.W.Va.1986) (citing *Martin* ). Section 1441(c) provides an exception to the unanimity requirement; it provides that "Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates." 28 U.S.C. § 1441(c).[10]

In *American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 14, 71 S.Ct. 534, 540, 95 L.Ed. 702 (1951), the Supreme Court found that there is no separate and independent cause of action or claim "where there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions." The *Finn* Court noted that an important purpose of § 1441(c), which replaced former § 71, was to restrict removal. *Id.* at 9–10, 71 S.Ct. at 537–38. Relying on *Able v. Upjohn, Co.,* 829 F.2d 1330 (4th Cir.1987) and *Santa Rosa Medical Center, Inc. v. Converse of Puerto Rico,* 706 F.Supp. 111 (D.P.R.1988), the removing defendants assert that the allegations against them are "temporally and factually separate" from those against Hinkle because their negligent actions, if any, in investigating, hiring, training, supervising, and disciplining Hinkle all occurred before and at different locations from the murder. However, the central question is whether the plaintiff has suffered more than one wrong. *Finn,* 341 U.S. at 13–14, 71 S.Ct. at 539–40. A claim of tort requires conduct causing harm and is completed when the harm occurs. Here, there was only one injury and thus one actionable wrong or claim—the death of Malcomb. *See Finn,* 341 U.S. at 13, 71 S.Ct. at 540 (noting that there was a single cause of action where there was a "single wrongful invasion of a single primary right of the plaintiff, namely, the right of bodily safety") (quoting *Baltimore S.S. Co. v. Phillips,* 274 U.S. 316, 321, 47 S.Ct. 600, 602–03, 71 L.Ed. 1069 (1927)). Multiple theories of liability against multiple defendants are not separate and independent claims when there is only one wrong. *Able,* 829 F.2d at 1332; *Santa Rosa Medical,* 706 F.Supp. at 116. Therefore, the Court **FINDS** that the complaint does not state "separate and independent" claims against the removing defendants; section 1441(c) does not apply to these facts; and the failure of Hinkle to join in removal is not excused under that section.

---

**10.** Before its amendment in 1990, § 1441(c) authorized the removal of "separate and independent" diversity claims. *See American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951); David D. Siegel, *Commentary on 1988 and 1990 Revisions of Section 1441, in* 28 U.S.C. § 1441 (1994), at 6, 10. Now, however, Section 1441(c) only authorizes removal of separate and independent federal question claims. 28 U.S.C. § 1441(c); Siegel, *supra,* at 10. However, the amendment is unimportant to the question here because the asserted basis of removal in Count 3 presents a federal question.

### Nominal Party

 Relying upon *Tri–Cities Newspapers, Inc. v. Tri–Cities Printing Pressmen and Assistants Local 349* 427 F.2d 325 (5th Cir.1970), the removing defendants argue that Hinkle is a nominal party to this suit and therefore need not join in removal. "[N]ominal or formal parties, being neither necessary nor indispensable, are not required to join in the petition for removal." *Tri–Cities,* 427 F.2d at 327. After reviewing the record and the authority cited, the Court agrees with Magistrate Judge Feinberg that the killer cannot be a nominal party to a suit to recover damages for his victim's death. A defendant has been defined as "nominal" elsewhere "if there is no reasonable basis for predicting that it will be held liable." *Shaw v. Dow Brands, Inc.,* 994 F.2d 364, 369 (7th Cir.1993). The Court understands *Shaw* to refer to the legal possibility of the defendant being held liable. When a defendant is convicted of murdering the plaintiff's decedent, there is every reason to believe that he would be held liable for the civil wrong of causing the death. The Court **FINDS** that Hinkle is not by any stretch of the imagination a nominal party to this action.

### "Refinement" to Rule of Unanimity

For the first time in their reply brief to the plaintiff's response to their objections to Magistrate Judge Feinberg's Findings and Recommendation, the removing defendants argue in the alternative that "removal under sections 1441(a) and (b) and the exercise of section 1367 supplemental jurisdiction should be considered." They argue that Hinkle need not join in removal because he could not remove the action if he was the sole defendant. In support of that proposition, they cite *Shepard v. Egan,* 767 F.Supp. 1158, 1161 (D.Mass.1990), which followed the "refinement" to the rule of unanimity that first appeared in *Hill v. City of Boston,* 706 F.Supp. 966 (D.Mass.1989):

> The language employed by some courts seems ... to assume ... that a defendant who would not be allowed to remove if it were the sole defendant need not join in the petition for removal of a codefendant.... This language suggests an appro-

priate refinement to the rule of unanimity requiring all parties to join in the removal petition. As refined, *unanimity as to removal is required only of those parties who would independently have the right to remove.*

*Hill,* 706 F.Supp. at 968 (emphasis added); *see also* WILLIAM W SCHWARZER, ET AL., FEDERAL CIVIL PROCEDURE BEFORE TRIAL [2:981.1], at 2D–132.10 (1995) ("defendants named *only* in *non-removable* claims (e.g., a codefendant to a federal officer, 28 U.S.C. § 1442(a)) need not join") (emphasis in original).

 The Fourth Circuit has not specifically addressed this refinement to the longstanding rule of unanimity, but at least one district court in this circuit, the District Court for the District of Maryland, has rejected the refinement. *See Whitcomb v. Potomac Physicians, P.A.,* 832 F.Supp. 1011, 1013 (D.Md.1993) (Motz, J., rejecting *Hill* refinement); *Chaghervand v. CareFirst,* 909 F.Supp. 304, 308–09 (D.Md.1995) (Garbis, J., noting *Whitcomb*'s rejection of *Hill* refinement). The refinement has also been rejected by other district courts within the same circuit as the *Hill* court. *See Gibson v. Inhabitants of Town of Brunswick,* 899 F.Supp. 720, 721 (D.Me.1995). The Fifth Circuit, which appears to be the only circuit to have addressed the refinement, also rejected the refinement after finding *Hill* to be at odds with the seminal case on unanimity, *Chicago, Rock Island & Pacific Ry. v. Martin,* 178 U.S. 245, 20 S.Ct. 854, 44 L.Ed. 1055 (1900). *Doe v. Kerwood,* 969 F.2d 165, 167 (5th Cir.1992). This Court agrees with the concern expressed in *Kerwood* and echoed in *Whitcomb* and *Chaghervand* that "one defendant not be permitted to impose his choice of forum upon other unwilling defendants and an unwilling plaintiff." *See Kerwood,* 969 F.2d at 168 (quoting *Hess v. Great Atlantic & Pacific Tea Co.,* 520 F.Supp. 373, 375 (N.D.Ill.1981)). Accordingly, this Court also rejects the *Hill* refinement. The Court **FINDS** that Hinkle's joinder in removal, although not given, was required.

### III. Conclusion

After reviewing the motion to remand and the City defendants' objections *de novo,* the

Court **FINDS** that the motion to remand has merit and that the objections to Magistrate Judge Feinberg's Findings and Recommendation, although timely, are without merit. Accordingly, the Court **GRANTS** the motion and **REMANDS** this matter to the Circuit Court of Nicholas County, West Virginia. The Court further **ORDERS** that the plaintiff be reimbursed for his reasonable costs and expenses, including attorney fees, incurred because of removal. 28 U.S.C. § 1447(c).

The Court **DIRECTS** the Clerk to send a certified copy of this Order to the Clerk of the Circuit Court of Nicholas County, West Virginia and a copy of this Order to all counsel of record and any unrepresented parties.